ORIGINAL

RECEIVED
JUL 1 8 2008
JUL 1 8 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

ANTONIO KENDRICK

      PLAINTIFF

                              CIVIL ACTION NO.

v.


ROD BLAGOJEVICH, ROGER WALKER JR.,

TERRY MCCANN, VERNITA WRIGHT

      DEFENDANTS

(individually and in their

official capacities)

08cv4086
JUDGE GUZMAN
MAG. JUDGE BROWN

## COMPLAINT UNDER THE CIVIL RIGHTS ACT

### I. JURISDICTION AND VENUE

1) This is a civil action authorized by 42 U.S.C.§ 1983 to redress the deprivation, under the color of state law, of right secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C.§ 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C.§ 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C.§2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2) The United States District Court for the Northern District of Illinois, Eastern Division, is an appropriate venue under 28 U.S.C. § 1391(b)(2) because it is where the events giving rise to this claim occured.

### II. PLAINTIFF

3) Plaintiff, Antonio Kendrick, is and was at all times mentioned herein a prisoner of the State of Illinois in the custody of the Illinois Department of Corrections. He is currently confined at the Stateville Correctional Center, P.O. BOX 112, Joliet, Il.60434.

### III. DEFENDANTS

4) Defendant, Rod Blagojevich, is the governor of the State of

Illinois. He is legally responsible for the overall operation of
the state, and all of the state's various departments including
the Illinois Department of Corrections. Defendant Blagojevich is
also responsible for the for the budget and the allocation of
resources for the various state departments, including the Illi-
nois Department of Corrections.

5) Defendant, Roger Walker Jr.,is the director of the Illinois
Department of Corrections. He is legally responsible for the over-
all operation of the Department and each institution under its
jurisdiction including Stateville Correctional Center and all
other maximum security prisons in the State of Illinois.

6) Defendant, Terry McCann, is the warden of Stateville Correc-
tional Center. He is legally responsible for the operation of
Stateville C.C., and for the welfare of all the inmates at the
prison.

7) Defendant,Vernita Wright, was the associate warden of programs
at Stateville C.C. She was legally responsible for the operation
of the law library and it's staff when the plaintiff's injury
and constitutional deprivations occured.

8) Each defendant is sued individually and in his official capa-
city. At all times mentioned in this complaint each defendant
acted under the color of state law.

IV. PRIOR LITIGATION

9) The plaintiff has no lawsuits pending in any court, nor has
the plaintiff ever filed a lawsuit to the best of his recollection.

V. STATEMENTS OF CLAIMS

10) Denial of Access to the Courts
During the calendar year 2007, until the present, the plaintiff

has had his litigation repeatedly and systematically prejudiced
due to his denied access to the courts. The plaintiff has had to
file several legal documents while being denied complete access
to the courts, resulting in his litigation being prejudiced.

The plaintiff's most important legal documents, which were pre-
judiced by the denial of access to the courts were legal briefs
due on July 16,2007 and December 05,2007, in separate criminal
proceedings. The plaintiff could not do any legal research to
counter the State's claims in their brief, nor could the plain-
tiff do any legal research to substantiate his own claims due to
the institution being on lockdowns, subsequently denying the plain-
tiff access to the courts. (ß7)(c9)

At Stateville C.C. there is no law library during institutional
lockdowns,and there are no persons sufficiently trained in the law
to aid the resident prisoners in the preparation of meaningful
legal documents.

Stateville currently has one paralegal by the name of Crystal
Mason, and one temporary assignment person. The paralegal gives
no legal advice. The plaintiff believes that this is at the ur-
ging of the Illinois Department of Corrections. Nor does this
paralegal provide inmates with reference material, such as legal
references, treatises, etc. during lockdowns. Nor does she do the
legal research for inmates that is requried to prepare a meaning-
ful legal document.

This one (1) paralegal is responsible for providing legal aid
to over 3000 prisoners, therefore it is numerically impossible
for her to realistically aid anyone when the institution is on
lockdown. Stateville has been denying inmates(prisoners) access
to the courts while on lockdown for several years.

The plaintiff has a sentence of natural life, and is proceed-
ing prose in all of his legal matters including direct appeal,
which is a daunting task which requires a great deal of legal
research. (C12,C13)

Researching legal issues and questions of law takes more time
than what the Stateville institution provides even when not on
lockdown. When the institution is not on lockdown , each housing

-3-

unit is provided with 3-4 hours per week, if the institutional
count does clear in a timely fashion. This is roughly 12-16 hours
per month for legal research if no law library days are missed. (f1)

Between December 20,2007 and February 25,2008, the plaintiff's
housing unit (B-House) has been afforded law library a total of
three times, which translates into 4.5 to 6 hours total.

The institution went on lockdown on January 13,2008 and came
off of lockdown for purposes of law library on February 11,2008.
On February 15,2008 a maintenance problem occured in the inmate
dining room, so the entire institution went back on lockdown. This
incident had absolutely nothing to do with the law library, but
it is an example of the defendant's propensity to lock the insti-
tution down for any reason, and subsequently deny the plaintiff
and all the other prisoners access to the courts. That particular
lockdown lasted from Febrary 15,2008 to February 25,2008.

The defendants are of the opinion that access to the courts is
a privilege and not a right which can be taken away or denied on
a whim.

In the calendar year 2007 the institution was on lockdown the
following dates: Febrary 4 to February 6; February 12 to February
15; April 20 to May 17; May 20 to May 29; July 01 to July 10;
July 11 to Septmber 24; November 25 to December 07;

When the institution goes on lockdown the plaintiff and other
prisoners have no idea when the lockdown will actually end.
During the aforementioned dates, which accounted for 40% of the
calendar year 2007 the plaintiff and other prisoners were denied
access to the courts. This denial is not an anomaly but a common
practice by the defendants.

11) Due Process Violations

When the Stateville C.C. goes on lockdown the institution is rele-
gated to segregation status. According to the Stateville inmate
handbook, prisoners are supoose to have access to the court on all
levels of lockdown, but this is a untruth and misrepresentation of
the defendants' true practices. (C10)

When the institution goes on lockdown all law library and access

-4-

to the court ceases to exist until the lockdown is over whenever that may be in complete disregard to prisoner's deadlines etc. Again, this has been a long standing practice of Stateville C.C.

Therefore, the denial of access to the courts is being used by the defendants as an extrajudicial punishment without the benefits of due process. The plaintiff has a liberty interest in receiving access to the courts, because he is acting as his own attorney, so to deny the plaintiff this serious liberty interest the plaintiff must be given a full and fair hearing.


12) Cruel and Unusual Punishment

The plaintiff is alleging a violation of cruel and unusual punishment in that when he has a legal deadline approaching he cannot eat, drink,or sleep because of the emotional stress of not being able to properly attack his criminal conviction. The plaintiff knows that while on lockdown he cannot research his legal issues and that he will have to submit unresearched legal documents to the courts significantly reducing his chances of regaining his freedom. The Stateville institution is on lockdown so much that everyday the plaintiff is literally terrified that the institution will go on lockdown and his litigation will be prejudiced.(E1-E3)

The plaintiff has requested and is currently receiving aid from Dr.Fink, the resident psychologist to help him manage the stress which induces his physical injury of not being able to eat, sleep, and drink when a legal deadline is approaching.

The defendants intentionally and systematically deprives the plaintiff and other prisoners of access to the court when they should reasonably know that the denial especially on lockdowns will in fact hinder the plaintiff's and other prisoner's legal work, thereby causing          a great deal of emotional duress.

Stateville is a maximum security institution, where the majority of the residents have substantial sentences of 20 years to natural life imprisonment.

Therefore, the defendants locking down the institution for 40% of any calendar year, while denying the prisoners access to the courts is cruel and unusual punishment, and it shows the defendants recklessness and deliberate indifference towards the legal needs and constitutional rights of the plaintiff and other prisoners at the Stateville C.C.

13) Equal Protection Violation

The plaintiff's right to equal protection was and is being violated in that being a law library worker (inmate law clerk), I earn less that $30 per month.

It is the plaintiff's job to help fellow inmates find legal issues to substantiate post trial attacks on their judgments of conviction. The plaintiff must then teach them how to research issues of law, and author various documents such as Petitions for Post-Conviction Relief; State and Federal Habeas Corpus Petitions; Mandamus'; Court of Claims Petitions; Writs of Certiorari to the United States Supreme Court etc.

"Similar situated" prisoners with job assignments such as dish-washers make $90 per month, apple sauce dippers $45-$90 per month, and kitchen cooks make $109 per month. No job assignment requires the education and testing like the law library requires. Regardless of job title every law library worker must have certification of being a trained inmate law clerk. Therefore, every law library worker must aid fellow inmates with research and the preparation of meaningful legal documents when the institution is not on lockdown.

The dietary workers job pay has increased from the Illinois Department of Corrections Administrative Directive 05.03.103A from 1986 of $30-$45 per month to currently $90 and $109 per month. The law library workers pay is the same today as it was in 1986, 22 years ago, but commissary prices have more than likely tripled along with other essentials like postage. (δ1-δ6)

Furthermore, inmates at Stateville who do not have job assign-ments receive $10 per month whether the institution is on lockdown or not. Yet, while on lockdown law library workers don't even receive $10. The plaintiff may receive $2 per month while on lock-down and that is generous. This is not even enough to purchase a deodorant or a tube of toothpaste.

Therefore, the law library workers are being discriminated against in both the job assignment pay and their idle pay. The law library workers should be making no less than $90 per month, and while on lockdown law library workers should receive $10 like other simi-larly situated prisoners.

-6-

The law library workers require the most cognitive skills to perform their duties, but the Defendant Walker refuses to recognize the law library workers as skilled workers, but has no problem recognizing dishwashers as skilled.

Also, the Director, Defendant Walker has required that all job assignments be rotated every 6 months. The only job assignments exempt from the rotations are industry, barber students, and dietary workers.

The Director, Defendant Walker forgets that he must have skilled workers in the law library at all times. Defendant Walker is of the opinion that he can take a prisoner from the yard crew and make him an inmate law clerk. The Defendant does not realize that the trained inmate law clerks are helping him meet a required constitutional need, therefore to not classify law library workers as a skilled job assignment and exempt them from the six month job rotation is a discriminatory practice. (C10)

Defendant Walker authorizes these job rotations with complete disregard for whether the prisoner can perform the task. For instance, there has been cell house help workers(housing unit maintenance) rotated to teacher's aid jobs when they themselves don't possess a G.E.D. Who can they help? This is an example of deliberate discriminatory practices on the part of the defendants.

The law library workers are also discriminated against in that the director refuse to re-classify the law library workers as a "critical job assigment". In order to work during lockdowns a job assignment must be designated as critical to the institution. dietary workers, commissary workers, and cell house help are all designated as critical assignments, but the one job that aid prisoners in their personal quests for freedom is not deemed a critical assigment.

The law library workers are being denied equal protection and are being discriminated against in that the Defendant Walker refuses to classify them as a skilled job assignment and pay them comparibly to other similarly situated prisoners. The Defendant Walker also refuses to exempt the law library workers from being rotated every 6 months like other similarly situated prisoners, and he refuses to classify the law library workers as a critical needs assignment, therby violating the law library worker's right

to equal protection and their right to not be discriminated against.

14) Governor Rod Blagojevich
This defendant is the State's chief administrator and is in charge
of the State's budget and it's allocation of resources. The
Plaintiff was told by the counselor and the grievance officer
during the grievance process that the State has a hiring freeze on
law library employees, which has resulted in the law library being
intentionally understaffed, thereby denying the plaintiff and
other similarly situated prisoners denial of access to the courts
while on lockdowns. (82, 83)

This budget cut to the Illinois Department of Corrections was
intentional and deliberate on the part of Defendant Blagojevich.
This defendant had to have known the constitutional deficiencies
and neglect that his actions would ultimately cause. If he did not
he acted recklessly and with deliberate indifference when he cut
the budget of the Illinois Department of Corrections.

As a result of the budget cut the Stateville law library is
not able to meet it's constitutional mandate of providing the pri-
soners with an adequate number of trained legal persons to aid in
the preparation of meaningful legal documents while on lockdown.
Due to Defendant Blagojevich's actions the plaintiff has suffered
both physical and emotional injury.

15) Director Roger Walker Jr.
Defendant Walker is the director of the Illinois Department of
Corrections. He is responsible for the enforcement of all rules
and policies of the department. Defendant Walker is also endowed
with the power to make and eradicate policy.

Defendant Walker must approve all lockdowns, so he has person-
al knowledge of the prisons operations on a day to day bases. He
is fully aware that the law library staff is not sufficient to meet
the needs of the prison population while on lockdown. It has been
suggested to this defendant that he allow the law library workers
to work while on lockdown in order to better meet the needs of the
prisoners, but the defendant refuses to do so. Yet, this defendant
allows dietary workers, commissary workers, and housing unit wor-
kers to work while on lockdown as they are deemed a critical

-8-

assignment. This defendant is fully aware that the only way to offer
the prisoners at the Stateville institution an inkling of their
right to "meaningful access" to the courts while on lockdown is
to classify the inmate law cleks as a critical needs assignment,
and allow them to return to work with the other workers who are
designated as critical needs assignment workers. (C10)

Defendant Walker is also responsible for all workers in the
institution being rotated every six months except the job assign-
ments that he deemed skilled positions. This defendant is well
aware that all of the law library workers must complete a program
of extensive training which takes in excess of six months to com-
plete. This program is no longer available at the institution. (C7)

The law library workers are the only workers at the institution
who must study extensively and pass a battery of exams before being
given a clerk's certificate through the I.D.O.C. school district. (C8)

It appears that Defendant Walker is very comfortable with the
prospect of inmates with no legal training or legal experience
assigned to the law library without assessing their qualifications.
Many prisoners at Stateville are illiterate and requires a
great deal of assistance, and this defendant does not take these
serious issues into consideration. This defendant does not rea-
lize that it takes skill to communicate with people, some of whom
are illerate, and assess their legal needs.
Defendant Walker was asked to examine and review the qualifications
of the inmate law clerks, and give the plaintiff along with other
law library workers the designation of a skilled job assignment
pursuant to Adminstrative Directive 05.03.103(a), and pay the law
library workers the same wages as the other designated skilled
workers.

Defendant Walker has shown a deliberate indifference for the law
library services and the law library workers at Stateville. During
the defendant's entire tenure as the director of the Illinois
Department of Corrections he has approved lockdowns, which he knew
would result in the the denial of access to the courts for the
prisoners, and he has discriminated against the inmate law clerks
by not designating them as a skilled job assignment and by not
giving them comparible pay and by not designating law library
workers as a critical needs job assignment.

Furthermore, by denying the plaintiff access to the courts while on lockdown this defendant is largely responsible for the injury suffered to the plaintiff's litigation and to his person.

16) Warden Terry McCann
Defendant McCann is the warden of the Stateville Correctional Center where the plaintiff is housed. Defendant McCann is responsible for supervising and directing the day to day operations of the institution.

He is also responsible for placing the plaintiff along with other prisoners on lockdown for extended periods of time, which ultimately prejudices the plaintiff's litigation and denies him access to the courts.

Defendant McCann has not implicated any measures to protect the constitutional right of the inmates at his institution. Defendant McCann also locks down the institution for the most minute incidents in the name of security.

Defendant McCann is fully aware that the plaintiff and other similar situated prisoners are missing critical deadlines and submitting sub par unresearched legal documents to the courts, thereby seriously prejudicing the plaintiff's and other prisoners liberty interests.

The defendant has worked in the department of corrections for many years, so he knows the damage he is causing to the plaintiff's litigation. The problem is that this defendant just does not care.

Defendant McCann also intentionally uses the denial of access to the court as an extrajudicial punishment in concert with the lockdowns. He is responsible for the institution being on lockdown for 40% of the calendar year 2007, when the plaintiff's litigation was prejudiced and when the plaintff's physical and emotional injury began.

17) Ex-Associate Warden of Programs Vernita Wright
Defendant Wright was the acting associate warden of programs when the plaintiff suffered his mental injury, resulting in his physical injuries of not being able to eat, drink, or sleep when a legal deadline was approaching.

The plaintiff is of the belief that Ex-warden Wright hired a Mr.D.McCoy to work in the law library. Mr.McCoy was subsequently assigned to handle the legal needs of B House, the unit where the plaintiff is assigned. Mr.McCoy was responsible for providing the plaintiff with meaningful legal assistance when the plaintiff's second piece of major litigation was prejudiced in December 2007. During this time the institution was on lockdown, so Mr.McCoy was the plaintiff's sole access to the courts.

Defendant Wright assigned Mr.McCoy to the law library knowing that he knew nothing about the law. Mr.McCoy knew so little about the law that the inmate clerks were assigned to teach him.

The plaintiff is of the belief that Defendant Wright hired Mr. McCoy since, as associate warden of programs, she was assigned to oversee the various programs, which included the law library and it's staff.

By hiring Mr.McCoy, Defendant Wright showed deliberate indifference and contempt for the United States Supreme Courts requirement that inmates be provided with persons trained in the law to aid in the preparation of meaningful legal documents.

18) Each defendant is sued individually and in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.(See Plaintiff's grievances)

## VI. EXHAUSTION OF LEGAL REMEDIES

19) Plaintiff, Antonio Kendrick, used the prisoner grievance procedure available at the Stateville C.C. to try and solve the aforementioned issues. (B4)(C3)

On 10/29/07, plaintiff presented facts relating to this complaint. On 11/06/2007, the plaintiff received a response back from a Counselor Karen Rabideau, stating that all jobs are to be rotated at Stateville except for industries, registered barbers, and dietary workers. The counselor noted this policy is per Springfield. Counselor Rabideau also noted that the pay scale for law library clerks is $20-$45 per month per administrative directive 05.03.103(a).

On 11/30/07, the plaintiff appealed the counselor's response to the Grievance Officer citing that the counselor did not address

all of the issues raised in the plaintiff's grievance. Upon further
review the grievance officer concurred with the counselor's re-
sponse and added that changing the status "critical needs assign-
ment" or payrate(comparible to other skilled workers) of a job
assignment is outside the purview of the institution, meaning
the Director, Defendant Walker is the only person who can make
those particular changes. The grievance officer also stated that
for any deadlines the grievant should notify and show proof of the
need for library assistance. *(C2)*

The grievance officer's response was concurred with by the war-
den, Defendant McCann on December 05,2007.*(C2)*

The plaintiff further appealed to Defendant Walker who agreed
that the grievance was handled properly at the institution, not
noticing that the issues raise by the plaintiff were all issues
which had to be addressed by him. The Defendant Walker denied the
plaintiffs grievance in full on December 17,2007, but his office
received the grievance on December 14,2007, which leads the plain-
tiff to believe that the director could not have even reviewed the
grievance.

On December 07,2007, the plaintiff filed another grievance *(B4)*
alleging a denial of access to the courts, because he had to
submit another legal brief to the courts, which was sub par and
unresearched, having been on lockdown again. The plaintiff alleged
that his litigation had been routinely and consistenly sub par
due to his denial of access to the courts while on lockdown which
at that point was 40% of the calendar year.

On 12/12/07, the Counselor Rabideau responded that the law
library staff does the best they can with their limited staff, and
that the State has a hiring freeze on law library staff. The
Counselor also sent a psychological referral to the mental health
care doctors Fink and Traylor for the plaintiff.*(B4)*

On January 11,2008 the grievance officer responded that she
was unable to substantiate any staff misconduct and that she
concurred with the counselor's response, and that the grievance
was resolved. On January 16,2008 Defendant McCann concurred.*(B2,B3)*

Though, the plaintiff already alleged a denial of access to the
court and is covered as far as the exhaustion requirement is *concerned*

from his first grievance, the plaintiff still appealed the second
grievance to Defendant Walker.

VII. LEGAL CLAIMS

20) The plaintiff realleges and incorporates by reference paragraphs
1-19.

21) The Denial of Access to the Courts violated the plaintiff's
rights and constituted a constitutional deprivation under the 5th,
6th, and 14th Amendments. The plaintiff is acting as his own
counsel, so to deny him access to the courts in essence denied the
plaintiff his right to meet with counsel.Procunier v. Martinez,416
U.S.396. This denial of access to the courts also violated the
the plaintiff's constitutional rights in violation of the United
States Supreme Court rulings in both Bounds v. Smith, 430 U.S.817
and Lewis v. Casey, 518 U.S. 343, guaranteeing "meaningful access"
to the courts.

22) The plaintiff's violation of due process claims are predicated
on the fact that the plaintiff is being denied access to the court
whenever the institution goes on lockdown without any type of
hearing or notice justifying the deprivation in violation of the
plaintiff's 5th and 14th Amendment rights which hold that no per-
son shall be deprived of liberty without due process of law.

23) The plaintiff's cruel and unusual punishment claim is predi-
cated on the emotional duress which causes  the plaintiff to not
be able to eat, drink, or sleep prior to his deadline dates when-
ever the institution is on lockdown, because the plaintiff knows
that he is being forced to submit unresearched legal documents

to the courts which is disastrous for any litigant, especially
a prose litigant. In addition, using the denial of access to the
courts as an extrajudicial punishment ia a violation of the plain-
tiff's 8th Amendment right to be free from cruel and unusual
punishment.

24) The plaintiff's violation of equal protection claim is predi-
cated on the defendant's discriminating against the law library
workers in that"similarly situated" persons with lesser skills at
Stateville receive greater benefits in violation of the plaintiff's
14th Amendment right to equal protection and not be discriminated
against.

   The plaintiff has no plain, adequate, or complete remedy at law
to redress the wrongs described herein. Plaintiff has been and will
continue to be irreparably injured by the conduct of the defendants
unless this court grants declaratory and injunctive relief which
the plaintiff seeks.

### VIII. PRAYER FOR RELIEF

25) Wherefore the plaintiff respectfully prays that this court
 enter judgment granting relief:

26) A declaration that the acts and ommissions descibed herein
violated the plaintiff's rights under the Constitution and laws
of the United States.

27) A preliminary injunction ordering defendants to hire ten(10)
paralegals, which includes the current 1 paralegal to supplement
the law library staff at Stateville;2) Classify the inmate law
library workers at all Illinois Department of Corrections insti-
tutions has a critical needs assignment, so that they can work
during lockdowns;3) Classify law library workers as a skilled
job assignment and pay them comparably to other skilled job assign-
ments at all I.D.O.C. penal institutions, and make the law library
workers exempt from the six month job rotations;4) Make it a requirement

that all library workers(inmates) in the Department of Corrections
law libraries be trained law clerks before they are given a clerk's
job assignment;5) Create policies by which every Illinois Depart-
ment of Corrections institution will be bound, to insure that no
Illinois prisoner will be denied access to the courts while on lock-
down and be forced to submit unresearched legal documents to the
courts.

28) A permanent injunction which includes pargraph 27, in addition,
that the State of Illinois allocates $2 million annually to the
law libraries at each maximum security facility;2) That the law
library service be contracted out to an independent firm, and that
the annual allocations be given directly to the firm to insure
the firms independence;3) That the firm will be responsible for
the inmate law clerk's salaries, for the purchase of periodicals,
legal reference books, and other supplies;and 4)that the court put
the defendants on supervision for 3 years to insure that they
comply with the courts orders.

29) Compensatory damages in the amount of $300,000.00 against
each defendant, jointly, and severally.

30) Mental and emotional damages in the amount of $500,000.00
against each defendant.

31) Punitive damages in the amount of $5,000,000.00 against
defendant Blagojevich, and $2,000,000.00 against defendants
Walker, McCann, and Wright.

32) Plaintiff's costs in this suit.

33) Any additional relief this court deems just, proper, and equitable.

* The plaintiff requests a jury trial on all issues triable by jury.

-15-

Date: _June 30, 2008_

Respectfully submitted,

Antonio Kendrick#R51546
Stateville Corr.Ctr.
P.O. BOX 112
Joliet,Il.60434


### verification

I have read the foregoing complaint and hereby verify that the matters alleged therein are true,except as to matters alleged on information and belief,and,as to those,I believe them to be true. I certify under  the penalty of perjury that the foregoing is true and correct to the best of my knowledge,pursuant to 28 USC 1746.

### COMPLAINT EXHIBITS

Ex.A-Declaration of the Plaintiff(A1-A5)

Ex.B-Grievance 1:B1(Director of I.D.O.C. Reply;B2,B3(Grievance Officer Reply;B4,B5(Grievance filed);B6(Court order to file brief by 12/06/07); B7(Proof of service from filing brief);B8(Notice that another one of Plaintiff's briefs was due on 07/16/07);B9(Letter from Plaintiff to Grievance Officer)

Ex.C-Grievance 2:C1(Director of I.D.O.C. Reply)C2(Grievance Officer Reply);C3-C6(Grievance filed);C7(Law Clerk Training Guide);C8(Law Clerk Certification);C9(Litigation notice of lrgal brief which had to be submitted during lockdown without any legal research);C10(State-ville Institutional Lockdown Status Levels);C11(Stateville's Law Library Guarantee);C12(Court notice allowing Plaintiff to proceed Prose);C13(Letter from attorney setting forth the standards of what the appellate court expects from a prose litigant);C14-C17(Various other documents to show that Plaintiff is proceeding prose in all of his legal endeavors)

Ex.D-I.D.O.C. Administrative Directive(05.03.103A) D1-D6

Ex.E-Outgoing Legal Mail Log...E1-E3

Ex.F-I.D.O.C. Response to another Stateville inmates grievance regarding the lack of time received by inmates in the law library(F1)

ILLINOIS DEPARTMENT OF CORRECTIONS IS ABBREVIATED I.D.O.C.

## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

ANTONIO KENDRICK
      PLAINTIFF                         CIVIL ACTION NO.

V.

ROD BLAGOJEVICH, ROGER WALKER,
TERRY MCCANN,VERNITA WRIGHT
      DEFENDANTS

### DECLARATION OF THE PLAINTIFF

I, the plaintiff,Antonio Kendrick, is an inmate at the State-
ville Correctional Center, and am housed in B-Unit also called
Bravo Unit.

When Stateville goes on lockdown the inmates are told nothing
by the administration, and that includes when we are going to come
off of lockdown. Therefore,I, as an inmate never know whether we
come off of lockdown or not.

The plaintiff, along with other Stateville inmates, was locked
down for 40% of the calendar year 2007. The plaintiff was locked
down due to no fault of his own on the following dates:Feb.4-6,2007;
Feb.12-15,2007; April 20-May 17,2007; May 20-29,2007; July 01-10,
2007; July 11-Sept.24,2007;and Nov.25-Dec.07,2007.

During 2008, the institution has been locked down the following
dates: Jan.13-Feb.08,2008; Feb.15-25,2008; March 25-April 18,2008;
and April 24,2008. As to date,April 25,2008, this is 50% of the
calendar year 2008 thus far. During the March 25-April 18,2008
lockdown, on April 10,12,and 17,2008, the institution allowed
3-4 inmates access to the law library while on lockdown for the
first time in almost a decade. Yet, these same inmates who were
granted access to the library while on lockdown were denied access
to legal books and the assistance in preparing a meaningful legal
documents as constitutionally required.

On April 24,2008, while on lockdown, a civlian law library
worker came to the plaintiff's housing unit for the very first time
to inquire as to the legal needs of the inmates. This is a start

Exhibit A

A1

on behalf of the defendants, and a concession that their past
practices were a blatant violation of the plaintiff's and prisoner's
constitutional right of access to the courts. Yet, the defendant's
new found awareness still does not cut the constitutional muster,
when if inmates who attend the law library during lockdowns have
no access to the legal books and no one to aid them in the inter-
pretation of applicable case law, and if the civilian worker comes
around during lockdowns but give no legal advice, does no legal
research, and does not aid in the preparation of meaningful legal
documents as constitutionally required.

The plaintiff is of the belief that these new changes may very
well have something to do with the new associate warden of programs,
Warden Hosey, more than likely at the urging of Defendant Roger
Walker. Still, this does not negate the fact that this plaintiff
has been forced to submit, unresearched, sub par legal documents
to the courts while attacking his criminal convictions. The
damage has been done. The plaintiff can prove that his litigation
was prejudiced, and that the denial of access to the courts by the
defendants is common place and intentional.

As stated previously, Stateville's law library has one paralegal,
and one temporary assignment employee, Ms.T.Winters, who the plain-
tiff must admit is very competent and a very hard worker. This is
a real change because the last temporary assignment personnel was
highly incompetent and lazy. Legal research is a very time con-
suming task, therefore, it is numerically impossible for one
paralegal Ms.Mason, and one temporary assignment personnel, Ms.Win-
ters to provide 3000 prisoners with meaningful access to the courts
as constitutionally required.

During the aforementioned lockdowns, the plaintiff has had to
file several legal briefs and other legal documents without the aid
of legal references or anyone to aid in the preparation of the
legal documents. This plaintiff acts as his own attorney so the
defendants' conduct is especially egregious in the instant cause.

Whenever Stateville goes on lockdown, access to the courts
ceases to exist. The defendants have recklessly disregarded the
plaintiff's right of access to the courts for so long, and they
will continue to do so if they are not made to see the error of
their constitutional infringement.

A2

The defendants' recklessness was exhibited between Feb.15-Feb.22,2008. Due to a maintenance problem in the dining hall the entire institution went on lockdown. Yet,visitation resumed, laundry, commissary,etc. The dining hall maintenance problem had absolutely nothing to do with the law library. The defendants could and should have allowed the plaintiff and others access to the law library, especially when they are very aware that they do not have the staff to provide inmates with adequate constitutional access to the courts.

On Feb.22,2008,while on a modified lockdown the defendants allowed the inmates to have outside recreation. This shows that the defendants believe that recreation is more important than inmates fighting for their freedom.

Whenever the plaintiff has a deadline to meet and the institution is on lockdown, I cannot eat, sleep, or drink due to the stress of knowing that I will have to submit very important legal documents to the courts without being able to research the issues being presented properly. This significantly reduces my chances of regaining my liberty.

The plaintiff has a sentence of natural life, and I am acting as my own attorney. My litigation has been repeatedly prejudiced. As a result the plaintiff is emotionally damaged knowing that if I had access to the courts while on these various lockdowns my legal documents submitted to the courts would have been so much better.

The plaintiff is currently in therapy with Stateville psychologist,Dr.Fink, who is helping the plaintiff cope with his emotional distress. The plaintiff is not able to see Dr.Fink as much as he needs to due to Dr.Fink's case load and due to lockdowns. During lockdowns, the plaintiff cannot go to his much needed therapy seesions, but inmates can go to visitation; dietary workers go to work; commissary workers go to work;and cell house workers go to work, but the plaintiff cannot go to his therapy sessions.

This modus operandi embodies the sentiments of the defendants. They simply do not care about the emotional wellbeing of the inmates nor our quest for freedom. The plaintiff feels that he will suffer emotionally for the rest of his life, induced by a

-3-

A3

deprivation of his constitutional right. A guaranteed constitu-
tional right.

The plaintiff knows that the institution is short staffed due
to a tight budget, but a short staff cannot be the reason why the
defendants have long and consistently violated the plaintiff's
and other prisoners' constitutional rights with reckless abandon.
A denial of access to the courts is being used by the defendants
as an extrajudicial punishment.

Further, the plaintiff's right to equal protection is being
violated in that the defendants are discriminating against him as
an inmate law clerk. I help inmates with their quest for freedom
and I must undergo more training than any other job in the institu-
tion, but the defendant's will not recognize law library workers
as a skilled job assignment.

No law library worker makes over $28 per month, but many cell-
house help make $45 per month, and dish washers make $90 per month.
Yet, cell house helpers and dish washers require no special educa-
tion. Law library workers are obviously being discriminated
against. The library supervisor says that the associate warden of
programs is the only person that can upgrade the law library
workers' pay. Law library workers have a right to be recognized
as a skilled job assignment and paid comparably to other skilled
job assignments.

In addition almost every job assignment works during lock downs,
because they are designated as a critical needs job assignment, but
law library workers are not considered a job assignment essential
to the institution. This is an ignorant assumption, because the
defendants know that they are short staffed, but they tend to have
difficulty in doing whatever makes the most sense. It seems as
though litigation is the only way to make the defendants listen.
The plaintiff has tried to talk to the defendants through the
institutional grievance process to no avail. The law library
workers should be designated as a critical needs job assignment,
so that we can work during the lockdowns, because the civilian
library workers are not capable of giving the Stateville prison
population the help we need in fighting our criminal convictions.

A4

Furthermore, due to the plaintiff not being able to eat, sleep,
or drink prior to a deadline, the plaintiff suffered in weight loss,
starvation, unconsciousness, hypoglycemia, pain, and mental anguish,
because I knew that I would have to submit unresearched, sub par
legal documents to the courts and this would by itself decrease
significantly my chances of obtaining my freedom.

I was told that if the governor did not have a hiring freeze on
the staff at Stateville more qualified persons would be hired to
work in the law library. I believe that Defendant Blagojevich's
actions in cutting the budget is the primary cause of my consti-
tutional deprivations.

Also as to the equal protection claim of mine, I have good
reason to believe that the law library clerks at Menard Correctional
are classified as skilled workers, so they are paid as skilled
workers and they are not subject to the six month job rotations.

As a library clerk, I am not rotated out of the law library after
six months, but my job assigment changes. This means that at least
one person, the job coordinator, knows that a library clerk cannot
be replaced by someone who can barely read and who does not have
an understanding of the law.

I have talked to several people regarding the problems I now
address, but no one seems to care enough to do anything. The new
warden of programs(M.Hosey) shows much promise, but the school
principal(Ms.Sessler)is so petty and uninformed that she is busy
trying to count pieces of typing paper instead of addressing the
real concerns of the law library which is under her watch.


I, Antonio Kendrick, swears under the penalty of perjury pursuant
to 28 USC 1746 and 18 USC 1621, that the information contained
therein is true and correct to the  best of my knowledge.

SWORN AND SUBSCRIBED BEFORE ME
THIS 3ᴿᴰ DAY OF  July      2008

OFFICIAL SEAL
SHERWIN K. MILES
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5-20-2012

NOTARY PUBLIC

-5-

AS



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

April 1, 2008

Antonio Kendrick
Register No. R51546
Stateville Correctional Center

Dear Mr. Kendrick:

This is in response to your grievance received on February 4, 2008, regarding legal (legal research), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance Officer's report (0083) and subsequent recommendation dated January 11, 2008 and approval by the Chief Administrative Officer on January 16, 2008 have been reviewed.

Offenders with legal deadlines receive priority.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:     Warden McCann, Stateville Correctional Center
        Antonio Kendrick, Register No. R51546

Exhibit B

81

RESPONSE TO COMMITTED PERSON'S GRIEVANCE

## Grievance Officer's Report

Date Received: January 11, 2005     Date of Review: January 11, 2005     Grievance #: _____

Committed Person: John D. Kendrick          ID#: B5-5___

Nature of Grievance: Other than Library Issues

**Facts Reviewed:** Grievant alleges that he was unable to file his brief due to being unable to do any legal research while on lockdown at the institution in August through his rights. Grievant states his litigation is multiply and insistently suspension to file that access while on lockdown. Grievant further feels the institution is systematically and deliberately denying him access to the courts the ____ ____ which has been 90% of the whole the year of 2004.

**Counselor Response:** According to the Library staff, while locked down, staff still distributes law needs and prioritizes offenders with deadlines due to shortage of staff can not bring legal books to the ____ They state that the state has only ___ freedom of law library staff, so do the best they can to help staff they are given, most of only an ___ only. This counselor did send a psych referral for Kendrick to Dr. Fink and Dr. ____.

Upon further review from Grievant, Grievant further asks to ___ the library concerning these issues, this office concurs with the use of response. Grievant is paid___ right ____ counsel-in-law. Grievant, subsequent staff must reduce. It is an add ___ officer's concern to determine who ruled ___ in ____ during ___ ____ Staffing the facility is beyond the purview of this office.

*over*

**Recommendation to Committed Person:** ____

___ (Attach a copy of Committed Person's Grievance including counselor's response if applicable)

Anti-Working: _____

Print Grievance Officer's Name _____    Grievance Officer's Signature _____

---

## Chief Administrative Officer's Response

Date Received: _1-16-05_    ☒ I concur    ☐ I do not concur    ☐ Remand

Comments

Chief Administrative Officer's Signature _____     Date: 1-16-05

---

## Committed Person's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand that appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's ____ response ___ and any pertinent documents.)

Committed Person's Signature _____    ID# _____    Date _____

Facts Reviewed: Grievant alleges that he was unable to file his brief due to being unable to do any legal research for his brief. Grievant states that the institution is flagrantly disregarding his rights.Grievant states that his litigation is routinely and consistently sub par due to a denial of access to the courts while on lockdown.Grievant states he feels the institution is systematically and deliberately denying him access to the courts due to lockdowns which has been 40% of the calendar year 2007.

Counselor's Response: According to law library staff,while on lockdown,staff is to do cellhouse rounds and prioritizes offenders with deadlines,but due to staff shortage cannot bring legal boxes with.They stated that the State has a hiring freeze on law library staff,so they do the best that they can with the staff that they are given,even if only temporarily assigned.This counselor did send a psyche referral for Kendrick to Dr.Fink and Dr.Traylor.

Upon further review from Grievance Office finds that after contacting the law library concerning these issues,this office concurs with the counselor response.Grievant's psychological issues were handled at counselor level.Unable to substantiate staff misconduct.It is an administrative decision to determine who receives movement during lockdowns.Staffing the facility is beyond the purview of this office.


Recommendation:Grievance is Resolved.

B3

ILLINOIS DEPARTMENT OF CORRECTIONS
## COMMITTED PERSON'S GRIEVANCE

Date: _December 07, 2007_  Committed Person (Please Print): _Antonio Kendrick_  ID#: _R51800_

Present Facility: _Stateville Corr. Ctr._  Facility where grievance issue occurred: _Stateville Corr. Ctr._

NATURE OF GRIEVANCE:

☐ Personal Property   ☐ Mail Handling   ☐ Restoration of Good Time   ☐ Disability
☐ Staff Conduct   ☐ Dietary   ☐ Medical Treatment   ☒ Other (specify): _Law Library Access_
☐ Transfer Denial by Facility   ☐ Transfer Denial by Transfer Coordinator

☐ Disciplinary Report _____  _____
                      Date of Report   Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Brief Summary of Grievance: _I received a court order stating that I was to have a legal brief filed in a criminal proceeding on December 06, 2007, but due to being on lock down I was unable to do any kind of legal research for my brief. Stateville does not have any law books to play for pro se litigate. This institution went on lock in schedule on Nov 22, 2007 and on lockdown Nov 25, 2007 for an incident that had nothing to do with the grievant. The grievant and the rest of the institution came off lockdown on November 07, 2007._

_The grievants litigation was also jeopardized in July '07 where the grievant received the Illinois State Prosecutors Brief in July 07 2007 and the grievant was to have his reply brief filed on July 16, 2007. It was impossible to research_

Relief Requested: _1) Have more library staff who have backgrounds in legal research 2) allow "pro se" litigate access to the courts while on lockdown to research or create satellite law libraries and 3) I need to see a phychologist or phychiatrist because I'm stressed and really do need help._

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Antonio Kendrick_          #R51542          12, 12, 07
Committed Person's Signature          ID#          Date

(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: _12, 12, 07_   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield IL 62794-9277

Response: _According to law library staff, while locked down, staff is to do cell house rounds and service offenders with deadlines, but due to Stateville staff cannot do law library runs while they stated the state has a time limit on law law staff. So do the best they can with the staff they have during a con't lockdown. Grievant is being assigned phys. appointment. Sign & Dated, refer to grievance to Dr. Funk or Dr. Taylor. 1, 4, 08_

_K. Roberts Counselor_   _____ Counselor Signature _____ CC2   Date of Response

---

### EMERGENCY REVIEW

Date Received: ____/____/____   Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
                                                                                    ☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____          ____/____/____
Chief Administrative Officer's Signature          Date



and reply to the States brief properly because we were on lockdown between July 21 2007 and July 10 2007. The institution went on lockdown again the next day July 11 2007 to September 24 2007. The grievant understands that the institution must do its job but the institution is flagrantly disregarding my rights. My litigation is currently, and consistently, sub par because I am being denied access to the courts while on lockdown.

State this law library it still does not do legal research, the most, one LL, unit worker in the projection of answering the legal discovery is with in. The will be because 2 people can't service the legal needs of 2000 inmates. McCabe, the law library is also assigned to C-House (where grievant resides) is not trained in the law, therefore this individual coming to my cell while on lockdown is in affect and insult on my constitutional right of access to the court. That would do nothing but slow us out even further. Note that law clerks (inmates) are not allowed to work during lockdown.

I feel that this institution is systematically and deliberately denying me access to the courts while on lockdown which has been 46% of the calendar year 2007. I am a pro se litigant representing myself on direct appeal under a sentence of natural life. Inmates don't represent themselves on direct appeal because the task is too lengthy. So to have me to submit unresearched legal documents to the courts and causing me to miss deadlines is not fair because it prejudices my litigation and threatens my chance of freedom.

Even when the institution is not on lockdown and we report to the library staff that we have a deadline this time is still inadequate. 90 minutes twice a week equals 12 hours per month. This is barely enough time to research a misdemeanor yet we are tried and fully the allocated time given to us for law library.

State the most meth special provisions for pro se litigants in general but especially while on lockdown. Every day. I am literally scared that we go on lockdown again and that my access to the courts will be cut off. This is not healthy for me to not be able to cut drop at this when I have a deadline approaching and we are on lockdown knowing I haven't the means to attack my criminal convictions, and having a natural life sentence does not help my mental state under these conditions.

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## ANTONIO KENDRICK v. STATE OF TENNESSEE

**Criminal Court for Shelby County**
**No. 92-12034**

No. W2007-00912-CCA-R3-HC



### ORDER

This matter is before the Court upon the Petitioner Antonio Kendrick's motion for appointment of counsel.

Although there is no federal or state constitutional right to the appointment of counsel in habeas corpus proceedings, a trial court has the statutory duty to appoint counsel "if necessary." *See* T.C.A. 40-14-204, *see also Summers v. State*, 212 S.W.3d 251 (Tenn. 2007). Appointment of counsel is not "necessary" merely because a petition is filed, rather appointment of counsel is "necessary" where the petition alleges facts that would justify relief and the petitioner is deemed indigent. *See John C. Tomlinson v. State*, No. M2001-02152-CCA-R3-CO (Tenn. Crim. App. at Nashville, June 28, 2002) (citations omitted).

Accordingly, having reviewed the Petitioner's motion in light of the entire record, it is hereby ORDERED that the motion for appointment of counsel is DENIED.

It is FURTHER ORDERED that the Petitioner shall have thirty (30) days from the date of this order in which to file a brief in this cause.

JOHN EVERETT WILLIAMS, JUDGE

B6

IN THE COURT OF CRIMINAL APPEALS AT JACKSON


ANTONIO KENDRICK

SHELBY COUNTY NO. 92-12034
W2007-00912-CCA-R3-HC

V.


STATE OF TENNESSEE



PROOF AND CERTIFICATE OF SERVICE

TO: Attorney General of Tennessee
     450 James Robertson Pkwy
     Nashville, TN 37243-0943


Please take notice that on December 5, 2007 I have placed the documents listed below for mailing through the United States Postal Service.

**Brief of the Appellant**
Pursuant to 28 USC 1746, I declare under penalty of perjury that the information contained therein is true and correct to the best of my knowledge.


Signature _____

Date _____12/5/07_____


Antonio Kendrick (pro se)
#R51546
Stateville Correctional Center
P O Box 112
Joliet, IL 60434

STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847-695-3750
847-695-0528 TDD

APPELLATE COURT
ELGIN, ILLINOIS
ELGIN, ILLINOIS 60123

Appeal from the Circuit Court of County of DuPage

Trial Court No.: 03CF2808

THE COURT HAS THIS DAY, 05/23/07, ENTERED THE FOLLOWING ORDER IN
THE CASE OF:

Gen. No.: 2-06-0473

People v. Kendrick, Antonio M.

> Motion by plaintiff-appellee, The People of the
> State of Illinois, to request an extension of time
> within which to file their brief, and objections
> thereto by appellant.  Motion allowed.  Final
> Extension.  The appellee's brief is due to be
> filed by July 2, 2007.  The appellant's reply
> brief is due by July 16, 2007.

Robert J. Mangan
Clerk

cc: Antonio M. Kendrick
    Honorable Joseph E. Birkett
    Lawrence M. Bauer, Interim Deputy Director
    Stephen E. Norris, Deputy Director

B8

1-10-08

Grievance Officer
Amy Workman

As to the enclosed grievance the counselors response was vague and ambigous. She reputed that during the count the library staff are to make cell house rounds, and they provide the offenders with deadlines. I've never seen such rounds being made.

The question is "they make rounds to do what exactly?" They don't give legal advice, and they don't do legal research for inmates. The only cell house in which rounds are made is F House. Grievance officer Workman, if the law library staff doesn't give legal advice how can they aid in the preparation of a legal document by researching etc.? They can't.

Furthermore, if there is a hiring freeze on library staff how long is it expected to last? Because as of now (1-10-08) Ms mason is the only paralegal at the institution. That's crazy.

This is my second grievance in the last 4 months and it's my last. It just seems that no one takes the law library right seriously. I'd just like for the administration to take a stand for offenders to insure that we receive what we're suppose to receive as to the law library.

What is the institution going to do to handle the law library problem seeing as though they are aware it all it's constitutional deficiencies?

Sincerely,

Antonio Kendrick
#R51546
B-802

B9



**Illinois**
**Department of**
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

December 17, 2007

Antonio Kendrick
Register No. R51546
Stateville Correctional Center

Dear Mr. Kendrick:

This is in response to your grievance received on December 14, 2007, regarding Programs/Jobs (requests law library worker raise in pay), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

The Grievance Officer's report (1514) and subsequent recommendation dated November 30, 2007 and approval by the Chief Administrative Officer on December 5, 2007 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc: Warden McCann, Stateville Correctional Center
Antonio Kendrick, Register No. R51546

Exhibit C

C1

| Grievance Officer's Report |
|---|

**Date Received:** November 30, 2007          **Date of Review:** November 30, 2007          **Grievance #** (optional): 1514

**Committed Person:** Antonio Kendrick          **ID#:** R51546

**Nature of Grievance:** Other-Equal Protection Discrimination

**Facts Reviewed:** Grievant alleges that he is asking that law library workers be designated as a critical assignment and be paid comparible to other skilled workers. Grievant states that giving the law library assignment a critical needs assignment allows them to work even though the facility is on lockdown. Grievant states that as it stands now, grievant is denied access to the courts.

Counselor Response: According to Assignment Office, all jobs shall be rotated at STA excpet Industries, registered barbers and dietary workers and this is per Springfield, not the facility. According to AD 05.03.103A, library Research Clerks' pay range is $20.00-$45.00 per month. If law clerks' supervisor chooses to, she can submit them for a pay raise after they have been in the assignment 60 days or more to AWP for their approval. Time for own law library must go through supervisor.

Upon further reivew from Grievance Office, finds that this office concurs with the counselor response and adds that changing the status (critical needs assignment) or the pay rate (comparible to other skilled workers) of an assignment is beyond the purview of this facilty. The allowance of offenders out of their cell to work is an administrative decision. For grievant's own needs for the law library access must apply the same rules as those not working in the law library, grievant should write his request and send it in to the law library staff for review and handling. For any deadlines, grievant should notify and show proof of the need for law library assistance.

**Recommendation:** Grievance is denied

Ami Workman
Print Grievance Officer's Name          Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** 12-5-07          ☒ I concur          ☐ I do not concur          ☐ Remand

**Comments:**

Chief Administrative Officer's Signature          Date  12-5-7

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board. P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature          ID#          Date

C2

ILLINOIS DEPARTMENT OF CORRECTIONS
## OFFENDER'S GRIEVANCE

| Date: 10-29-07 | Offender: (Please Print) Antoni Kimbrck | ID#: R51546 |
|---|---|---|
| Present Facility: Stateville Corr Ctr | Facility where grievance issue occurred: | |

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☐ Staff Conduct ☐ Dietary ☐ Medical Treatment ☐ HIPAA
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator ☒ Other (specify) _equal pro..._

☐ Disciplinary Report: ____/____/____
　　　　　　　　　　　　　Date of Report　　　　　　　　Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:

　**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
　**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
　**Chief Administrative Officer,** only if EMERGENCY grievance.
　**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** 1) The grievant asks that the law library workers be reclassified from unskilled to skill workers; 2) The grievant asks that law library workers be designated as a critical assignment as to the Adult Lockdown Status Levels; 3) The grievant asks that the law library workers be paid comparibly to other skilled workers such as the kitchen cooks and/or industry workers; 4) The law library workers are being denied access to the courts.

**Relief Requested:** That the law library workers be classified by the institution as a skilled critical assignment, that we be paid comparibly to the kitchen cooks and/or industry, and that we receive law library time for ourselves

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

| Offender's Signature | ID#: R51546 | Date: 11, 4, 07 |
|---|---|---|

and that we not be subject to the six month rotation
(Continue on reverse side if necessary)

---

### Counselor's Response (if applicable)

Date Received: 11, 6, 07　☐ Send directly to Grievance Officer　☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: According to Assignment office all jobs should be noted at S/A Service, + Industrials, registered barbers and custodian workers and this is per Springfield, not the facility. According to A.D. 05.03.103A, library research clerk's pay range is + 20.00 - $45.00 per month. If law clerks Supervisor chooses to, she can submit them for a pay raise after they have been in the assignment 60 days or more to ALOP for their approval. Time for our law library must be through supervisor. (See Policy)

| K. Rabideau CC2 | | |
|---|---|---|
| Print Counselor's Name | Counselor's Signature K Rabideau CC2 | Date of Response 11, 15, 07 |

---

### EMERGENCY REVIEW

Date Received: ____/____/____

Is this determined to be of an emergency nature?
☐ Yes; expedite emergency grievance
☐ No; an emergency is not substantiated. Offender should submit this grievance in the normal manner.

Chief Administrative Officer's Signature _____　Date: ____/____/____

ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

This entire grievance consists of (4) four issues, and they are premised on the United States Supreme Court rulings in Younger v. Gilmore, 404 U.S. 15, 92 S.Ct.250 and Bounds v. Smith, 430 U.S. 817, 97 S.Ct.149, which both hold : The fundamental constitutional right of access to the courts require prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.

Issue 1) The grievant asks that the law library workers be reclassified from unskilled to skilled workers. In support thereof, the grievant states as follows: In order to meet the constitutional requirements set forth in Younger v. Gilmore and Bounds v. Smith to provide inmates with legal assistance in researching, preparation, and filing of meaningful legal papers, the law library workers are required to complete a comprehensive Law Clerk Training Program. This program encompasses the learning tools necessary to become certified law clerks. The I.D.O.C. School District #428 certifies inmates after the completion of the entire curriculum. The program is fully sponsored by the school district and the exams are proctored by Mrs.P. Baker. After the completion of the program the law clerks are essentially skilled paralegals. No matter the job designation Mrs.Baker and Ms.Mason strongly urges everyone who works in the law library to complete the course (see appendix (exhibit A)

Furthermore, law library workers being a skilled position should not be rotated every six months. Kitchen workers nor industry workers are rotated because they are considered skilled job assignments. Not just anyone can and has meet the requirement of a law clerk as specified in the Stateville Institutional handbook. (See exhibit B (offender rights) law library offerings)

ISSUE 2: The grievant asks that the law library clerks be designated as a critical assignment during level 4 lockdowns, to enable us to assist fellow inmates and ourselves in the research, preparation, and filing of legal documents.

Ms.Mason cannot handle the volume of inmates needing legal assistance during extended lockdowns. Thinking that she can handle such needs is the equivalent of one person working commissary, and that notion is both fanciful and impossible.

As it stands, during lockdows inmates are missing critical deadlines which means they are being denied access to the courts as guaranteed by the United States Supreme Court. Access to the courts is also included as an offender right in the Stateville Inmate Handbook. Having Ms.Mason attempt to service an entire inmate population is not contitutionally sufficient. This is a right not a privilege given at someone's leisure nor discretion.

C4



During these lockdowns inmates also need access to their legal boxes which is part of the law library right and constitutional right to access to the courts.

When an offender misses a court deadline it is a serious situation, because they go through a "procedural default", this means they are then cut off from the court.

If law library workers are classified as a critical assignment these issues can for the most part be alleviated. The primary objective of most inmates is to go home, and we help these people go home. Not the kitchen workers, nor commissary workers, nor the cell house help, but these are just some of the assignments that resume their duties on level four lockdowns.

As it stands law library workers resume their duties when the institution resumes normal operations, when we should logically resume our duties immediately after the institution is off of level one. Many security staff members are under the impression that law library is a privilege given at their discretion, and they are terribly mistaken. Even if commissary and other programs are suspended law library cannot be since it is mandated by law. Therefore, this right needs to be given priority like visitation instead of being treated like recreation or given the importance of a barbershop visit.

According to the Stateville Lockdown Status Levels (see appendix), on all lockdowns inmates are always suppose to have access to the law library, which means access to legal books, consultations, and other types of help. The Stateville inmate population receives next to nothing which is a flagrant constitutional violation, because the administration is very aware of the law library situation. (see exhibit B (appendix))

ISSUE 3: The grievant asks that the law library workers be paid comparably to other skilled workers at this institution such as the industry workers or the kitchen cooks.

The law library clerk job assignment is the only assignment that allows this institution to meet inmates' fundamental right mandated by the United States Supreme Court. We arguably have the most important job assignment, but we get paid less than any other job assignment whether they be skilled or not.

Researching and meeting the legal needs of the inmate population is much more challenging than sweeping the tunnels, dipping the apple sauce, passing out bread, or putting chicken in the oven. Yet, all of these assignments make more than the law library workers.

We must take several test to become certified law clerks, therefore we should be paid at the same rate of a kitchen cook if not an industry



ILLINOIS DEPARTMENT OF CORRECTIONS
**OFFENDER'S GRIEVANCE** (Continued)

On pg.29 of the Stateville INstitutional Handbook reads: the law library provides legal reference materials and offender law clerks for individual legal assistance . A law library clerk cannot give legal assistance if they are not qualified to do so. Knowing and interpreting the law is a skill that takes an analytical mind and mental dexterity. unlike counting chicken and sweeping, and getting paid $100 a month. Not saying that the kitchen workers don't deserve what they get. The point is that the law library workers are not getting what we deserve. *law library workers only receive $28 month while kitchen works receive $100 month (see Exhibit A /appended)*

ISSUE 4: The law library workers are being denied access to the courts.

As it stands the law library operation hours are Monday - Thursday, 9:00 - 10:30am and 12:00 - 1:30pm. On Fridays, we make F-House rounds. Everyday other than Friday, we go to the dining hall after the morning line eat lunch and stay in the dining hall from 60 to 90 minutes daily. The law library workers are the only job assignment who leaves their job assignment for lunch. Every other assignment lunches are delivered to their designated areas. After waiting 60 to 90 minutes in the dining hall we then return to the law library with the afternoon law library line.

During the law library hours as mandated by the Stateville Inmate Handbook, we give those seeking help personal assistance during the law library hours, which leaves no time to handle our own personal legal needs. This means that we are in essence being denied access to the courts. Nevertheless, this problem can be rectified very easily.

If the law library workers can stay at the law library in between law library lines we would be able to handle our legal needs in addition to the legal needs of F-House and N.R.C. The 60-90 minutes we sit in the dining hall is dead time.

This can work if the security detail sticks with the law library schedule instead of calling the movement officer to rush the lines. The assigned officer can take their lunch. and come to get the law library workers immediately thereafter, if the must leave their designated post.

The law library workers are not a law library line, so Mrs.Baker nor Ms.Mason presence is not necessary. This will not be an extra burden on ,security labor wise nor monetary wise  but it will allow the law library workers our right to access to the courts. *This grievant is a prose litigant and cannot be denied access to the court whether on lock down or not. (See Exhibit C /appended)*

cc: *Guy Pierce, Sherry Benton, Cherry Brewer, Robert Williams, and Roberta Fews*

C6

# STATEVILLE CORRECTIONAL CENTER LIBRARY
## LAW CLERK TRAINING
### STUDY GUIDE

The Law Clerk Training is an independent study program that has been developed to evaluate the qualifications of potential law clerks. Offenders who successfully complete the program will receive a certificate from the School District. Participation in this program does not guarantee you a position as a Law Clerk.

Enclosed you will find the following study materials:

Overview of Law Library Services and Illinois Court System (2 pages).

Fundamentals of Paralegalism 3rd Edition by Thomas E. Eimermann.

Post-Trial Remedies: A Handbook for Illinois Prisoners.

Bounds v. Smith, 430 U.S. 817 (case law)

Lewis v. Casey, 518 U.S. 343 (case law)

Follow these guidelines for studying independently. There will be 5 (five) tests administered as individuals are ready according to the following:

The first two test are based on the Eimermann book Fundamentals of Paralegalism 3rd Edition.

The second two tests are based on the Post-Trial Remedies Handbook.

The last test is a general all around test of knowledge and skills.

Assistance with your studying will be provided if needed. GOOD LUCK!

**ILLINOIS DEPARTMENT OF CORRECTIONS**

## School District #428

certifies that

**ANTONIO KENDRICK**

has, on this ___8th___ day of ___January___, in the year ___2007___.

successfully completed

The Law Clerk Training Program

at the ___Stateville___ Correctional Center.

_Superintendent_

_Chief Librarian_

_Senior Paralegal_

C8



## STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
55 SYMPHONY WAY
ELGIN, ILLINOIS 60120-5558

Appeal from the Circuit Court of County of DuPage

Trial Court No.: 03CF2808

THE COURT HAS THIS DAY, 05/23/07, ENTERED THE FOLLOWING ORDER IN THE CASE OF:

Gen. No.: 2-06-0473

People v. Kendrick, Antonio M.

Motion by plaintiff-appellee, The People of the State of Illinois, to request an extension of time within which to file their brief, and objections thereto by appellant. Motion allowed. Final Extension. The appellee's brief is due to be filed by July 2, 2007. The appellant's reply brief is due by July 16, 2007.

Robert J. Mangan
Clerk

cc: Antonio M. Kendrick
    Honorable Joseph E. Birkett
    Lawrence M. Bauer, Interim Deputy Director
    Stephen E. Norris, Deputy Director

(Missed deadline due to lockdown)

C9

When necessary, lockdowns shall be imposed at this facility. The departmentally mandated five stages of lockdown status are outlined below. A "Level I" lockdown is the most restrictive upon facility operations and the provision of inmate services. The goal shall be for the facility to progressively move through the higher status levels in order to restore normal operations.

## Adult Lockdown Status Levels

| | Level I | Level II | Level III | Level IV | Level V |
|---|---|---|---|---|---|
| Movement | None except emergency medical and shower (escorted) | May be escorted; condemned unit, seg, TC, and Extremely high escapes must be escorted | May be escorted; condemned unit, seg, TC, and Extremely high escapes must be escorted | Some | Some |
| | Mechanical restraints, behind back* | Mechanical restraints, behind back* | Mechanical restraints, behind back* | May be escorted; condemned unit, seg, TC, and Extremely high escapes must be escorted | May be escorted; condemned unit, seg, TC, and Extremely high escapes must be escorted |
| | | | | Mechanical restraints, behind back* | Mechanical restraints, behind back* |
| Visits | None the 1st 48 hrs, except emergency legal visits, routine visits after 48 hrs. | None the 1st 48 hrs. of lockdown, except emergency legal visits; routine visits after the initial 48 hrs. | Restored. General population - 2 hours; Non-contact visits - 1 hour | Restored. General population - 2 hours; Non-contact visits - 1 hour | Restored. General population - 2 hours; Non contact visits - 1 hour |
| Phone | Legal and emergency | Legal and emergency | Consistent w/grade; one 30 minute call per month. | Consistent w/grade; one 30 minute call per month. | Consistent w/grade; one 30 minute call per month |
| Health Care | Daily in cell | Out of cell with mandatory call pass | Out of cell with mandatory call pass | Out of cell with mandatory call pass | Out of cell with mandatory call pass |
| Crisis Care | As needed per ADO4.04.102 | As needed per ADO4.04.102 | As needed per ADO4.04.102 | As needed per ADO4.04.102 | As needed per ADO4.04.102 |
| Segregation | Limited same as general population | Limited same as general population | Limited same as general population | Limited same as general population | Limited same as general population |
| Commissary | None | None | If has privileges, bag shop bi-weekly | If has privileges, bag shop bi-weekly | If has privileges, bag shop bi weekly |
| Mail | Yes, as soon as practical | Yes | Yes | Yes | Yes |
| Searches | As needed, strip search prior to or after movement. | Unrestrained, strip search prior to or after movement. | Search prior to or after movement. | Search prior to or after movement. | Search prior to or after movement. |
| Law Library | At cell | At cell or satellite law library | At cell or satellite law library | At cell or satellite law library | At cell or satellite law library |
| Showers | At least every 7 days | At least every 7 days | At least every 7 days | At least every 7 days | At least every 7 days |
| Hygiene Items | Distribute weekly as needed | Distribute weekly as needed | Distribute weekly as needed | Distribute weekly as needed | Distribute weekly as needed |
| Laundry | Weekly | Weekly | Weekly | Weekly | Weekly |
| Clean Bedding | Monthly | Monthly | Monthly | Monthly | Monthly |
| Clinical Services | Daily | Daily | Daily | Daily | Daily |
| Clergy | Weekly | Weekly | Weekly | Weekly | Weekly |
| Offender Assignments | **None | **None | **None | Only critical assignments filled as approved by Lockdown Coordinator. | Additional assignments identified to return to normal operations |
| Recreation | None | None | None | None | Limited out of cell as approved by Lockdown Coordinator. |

C10

4. Lending library (religious books and cassette tapes).
5. Literature ministry, and
6. Religious correspondence courses.

Chaplains visit housing units and holding areas daily to confer with those who seek consultation. Offenders may also submit written requests to Chaplaincy Services staff regarding receipt of religious services.

G. Library Services

The Department of Corrections School District #428 also provides library services. There are three types of services:

1. *General Library* - provides for the general and research needs of offenders. Materials include popular paperbacks, fiction and non-fiction hardbacks, reserve and reference section, Spanish language material, pamphlets and articles.

2. *Law Library* - provides legal reference materials and offender law clerks for individual legal assistance.

3. *Minimum Security Unit* - a library facility is provided at the Minimum Security Unit.

4. *Segregation Library* – a library facility located in Unit F services offenders who are in segregation status.

Rules of the Library:

| | |
|---|---|
| No stealing, | No wearing of head coverings, |
| No horseplaying, | No destruction of property, |
| No card playing, | No hairdressing or braiding, |
| No cursing, | No feet on furniture, |
| No loud talking, | No moving tables or furniture, |
| No chess playing, | No more than four persons at round tables, |
| No domino playing, | No more than six persons at rectangular tables. |

H. Volunteer Services

Various types of volunteer services are available through the Chaplaincy Department. Lists of programs provided by volunteers are periodically posted in housing units.

I. Post Incarceration Supervision Program

The Post Incarceration Supervision Program is intended to assist an offender's reintegration into society. The curriculum of this program consists of standardized formal classroom training that includes self-esteem and confidence building, job seeking skill enhancement, substance abuse, anger management, use of community resources, developing release plans, conditions of release, reporting requirements, requirements for consideration of referral for early discharge, the offender's responsibilities upon release

29

RECEIVED

NOV 15 2006

SAAP          DISTRICT



STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
55 SYMPHONY WAY
ELGIN, ILLINOIS 60120-5558

Appeal from the Circuit Court of County of DuPage

Trial Court No.: 03CF2808

THE COURT HAS THIS DAY, 11/14/06, ENTERED THE FOLLOWING ORDER IN THE CASE OF:

Gen. No.: 2-06-0473

People v. Kendrick, Antonio M.

Motion by defendant-appellant, Antonio Kendrick, for leave to proceed pro se. Motion by appellant is allowed and the Office of State Appellate Defender, Second District, is hereby discharged as appellant's attorney of record on this appeal. Appellant's brief is due December 19, 2006. Appellee's brief is due January 23, 2007. Appellant's reply brief is due February 6, 2007.

Robert J. Mangan
Clerk

cc: Thomas A. Lilien, Deputy Defender
    Honorable Joseph E. Birkett
    ✓Martin P. Moltz, Deputy Director

C12



## OFFICE OF THE STATE APPELLATE DEFENDER
## SECOND JUDICIAL DISTRICT
### 2010 LARKIN AVENUE
ELGIN, ILLINOIS 60123

**THOMAS A. LILIEN**
DEPUTY DEFENDER

TELEPHONE: (847) 695-8822
FAX: (847) 695-8959

**KIM M. DEWITT**
ASSISTANT DEFENDER

WWW SITE: http://www.state.il.us/defender/

October 23, 2006

Mr. Antonio M. Kendrick
Register No. R-51546
Stateville Correctional Center
P.O. Box 112
Joliet, IL  60434

Dear Mr. Kendrick:

I received your letter stating that you have decided to represent yourself on appeal, because you do not want to wait for this office to file the brief. You have every right to represent yourself. <u>However, you will be held to the same rules that apply to attorneys. If you do not file a brief that complies with the rules, the Court can strike it and then you have no appeal.</u> Also, the Appellate Court will *not* send you the common-law record, even though you are acting as your own lawyer. You are only entitled to a copy of the transcripts. This office will not be able to assist you, and we will not accept your phone calls.

Your brief is due April 2, 2007. Although the State's brief is due May 7, they usually request an extension of time of up to 90 days. There is no time limit for the Court to issue its decision. If you file a motion to represent yourself, please serve this office with a copy.

Sincerely,

*Kim M. DeWitt*

Kim M. DeWitt
Assistant Defender

C13



## STATE OF ILLINOIS APPELLATE COURT SECOND DISTRICT

OFFICE OF THE CLERK
847/695-3750
847/695-0092 TDD

APPELLATE COURT BUILDING
55 SYMPHONY WAY
ELGIN, ILLINOIS 60120-5558

Appeal from the Circuit Court of County of DuPage

Trial Court No.: 03CF2808

THE COURT HAS THIS DAY, 10/03/07, ENTERED THE FOLLOWING ORDER IN
THE CASE OF:

Gen. No.: 2-06-0473

People v. Kendrick, Antonio M.

> Motion by defendant-appellant, Antonio Kendrick,
> to withdraw request for oral argument. Motion by
> appellant to withdraw his request for oral
> argument is allowed.

Robert J. Mangan
Clerk

cc: Antonio M. Kendrick
Honorable Joseph E. Birkett
Lawrence M. Bauer, Deputy Director
Stephen E. Norris, Deputy Director
Rebecca E. McCormick

C14



Court of Criminal Appeals - Western Division
Supreme Court Building
#6 Highway 45 By Pass
P. O. Box 909
Jackson, TN 38302-0909
(731)423-5840


Antonio Kendrick #R51546
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434


**Date Printed:** 10/01/2007
**Notice Date:** 10/01/2007
**Case Style:** Antonio Kendrick vs. State of Tennessee

**Case Number:** W2007-00912-CCA-R3-HC
**Action:** Date Filed: 10/01/2007 MOTION/PETITION for Extension to File Appellant's Initial Brief :: Filed By Appellant/Defendant(s): Antonio Kendrick
**Trial Court:** Shelby County Criminal Court    **Trial Court Number:**    92-12034


The Appellate Court Clerk's Office has entered the above action in the Justice Information Tracking System

COMMENT:
Motion for extension of time/Stay filing of brief

(Case in which grievant is proceeding prose)

MLM

        C:  Rachel E. Willis

Antonio Kendrick #R51546
Stateville Correctional Center
P.O. Box 112
Joliet, IL  60434

**Date Printed:** 10/15/2007
**Notice Date:** 10/15/2007
**Case Style:** State of Tennessee  v.  Antonio Kendrick

**Case Number:** W2007-02109-CCA-R3-HC
**Action:** Date Filed: 10/15/2007  MOTION/PETITION Related to Indigence: Motion to Proceed
as a Poor Person :: Filed By Appellant/Defendant(s): Antonio Kendrick
**Trial Court:** Shelby County Criminal Court      **Trial Court Number:**    96-11229

The Appellate Court Clerk's Office has entered the above action in the Justice Information Tracking System

(Case in which grievant is proceeding prose)

MLM

C:  Rachel E. Willis

C16

Court of Criminal Appeals - Western Division
Supreme Court Building
#6 Highway 45 By Pass
P. O. Box 909
Jackson, TN 38302-0909
(731)423-5840


Antonio Kendrick #R51546
Stateville Correctional Center
P.O. Box 112
Joliet, IL  60434


Date Printed:  09/17/2007
Notice Date:  09/12/2007
Case Style:  Antonio Kendrick vs. State of Tennessee
Case Number:  W2007-00912-CCA-R3-HC
Action:  Date Filed: 09/12/2007  Date Received: 09/11/2007  APPELLATE RECORD: Original
Filed in the Court of Criminal Appeals ::
Trial Court:  Shelby County Criminal Court          Trial Court Number:     92-12034


The Appellate Court Clerk's Office filed the appellate record.  The record contains:  1 Volume.

1 Technical Record Volume

Briefs filed in the Court of Criminal Appeals must comply with Rules 27, 28 and 29 of the Tennessee Rules of
Appellate Procedure.

When filing briefs in the Court of Criminal Appeals, you must provide an original and three copies.

Appellant briefs must be in BLUE covers.
Appellee briefs must be in RED covers.
Reply briefs must be in GRAY covers.


MLM

        C:   Rachel E. Willis
             Shelby County Criminal Court Clerk


Appellate Court Clerk's web page: http: www.tncourts.g...

217

# ILLINOIS DEPARTMENT OF CORRECTIONS

## ADMINISTRATIVE DIRECTIVE

| | |
|---|---|
| Number | 05.03.103A |
| Page Number | 1 of 5 |
| Effective Date | 9/1/86 |

| | | |
|---|---|---|
| Section: | 05 | Operations |
| Subsection: | 03 | Inmate Management and Movement |
| Subject: | 103A | Monetary Compensation for Inmate Assignments |

I. **POLICY**

A. **Authority**

Ill. Rev. Stat., Ch. 38, Para. 1003-2-2 and 1003-12-5.

20 Ill. Adm. Code 420.

B. **Policy Statement**

The monetary compensation plan for inmate work assignments in adult correctional facilities shall be standardized.

II. **PROCEDURE**

A. **Purpose**

The purpose of this directive is to establish written guidelines in regard to monetary compensation of inmate work assignments except assignments to Correctional Industries and School District #428.

B. **Applicability**

This directive is applicable to all the correctional facilities within the Adult Division.

C. **Internal Audits**

An internal audit of this directive shall be conducted at least annually.

D. **General Provisions**

The Chief Administrative Officer or his designee at each facility shall ensure that:

1. All current inmate assignments are developed in writing and properly categorized according to Section II.E.

2. All initial assignments and subsequent changes are made within the guidelines established in departmental rules for inmate work assignments.

*Exhibit D*

EXHIBIT
# 1

D1

# ILLINOIS DEPARTMENT OF CORRECTIONS

**ADMINISTRATIVE DIRECTIVE**

| | |
|---|---|
| Number | 05.03.103A |
| Page Number | 2 of 5 |
| Effective Date | 9/1/86 |

| | | |
|---|---|---|
| Section: | 05 | Operations |
| Subsection: | 03 | Inmate Management and Movement |
| Subject: | 103A | Monetary Compensation for Inmate Assignments |

3. An inmate's initial placement on a work assignment is compensated at the minimum wage prescribed for that category of work. After serving sixty days on the assignment, the inmate may be considered for a raise depending upon the effort, skill, and economic value of his work.

E. Categories of Work Assignments      Wage Range

1. Skilled Workers (Carpenters, electricians, plumbers, painters, brick-layers, cement finishers, welders, cooks, bakers, butchers, auto mechanics, locksmiths, refrigeration-air conditioning repairmen, or other craftsmen or specialists with like skills and experience.)

   $1.43 to $2.15 daily

   ($30 to $45 monthly)

2. Semi-skilled Workers (Printers, barbers, tailors, landscapers, boiler room workers, inmates involved in food preparation, inmates who function on assignments requiring similar skills and experience, and trainees and apprentices for skilled worker positions.)

   $.95 to $1.43 daily

   ($20 to $30 monthly)

3. Library Research Clerks (Inmates who work in the general library or the law library and who perform functions related to collection maintenance, legal research or other technical functions within the library.)

   $.95 to $2.15 daily

   ($20 to $45 monthly)

4. Clerical Workers (Inmates who work in the commissary, law library, general library, cellhouse, or other areas and who perform clerical functions, including typing and maintaining records.)

   $.95 to $1.43 daily

   ($20 to $30 monthly)

D2  2

| | |
|---|---|
| **ILLINOIS DEPARTMENT OF CORRECTIONS** | **ADMINISTRATIVE DIRECTIVE** |

| Number | 05.03.103A |
|---|---|
| Page Number | 3 of 5 |
| Effective Date | 9/1/86 |

| | | |
|---|---|---|
| Section: | 05 | Operations |
| Subsection: | 03 | Inmate Management and Movement |
| Subject: | 103A | Monetary Compensation for Inmate Assignments |

5. **General Laborers** (Runners, cellhouse help, lawn workers, laundry handlers, janitors, commissary workers, general store workers, clothing room workers, Bureau of Identification workers, and similar positions involving general labor work.)

$.71 to $.95 daily

($15 to $20 monthly)

6. **Highway Road Programs** (Inmates who participate in the Department of Transportation Highway Work Program.)

$.95 to $2.15 daily

($20 to $45 monthly)

7. **Students** (Inmates assigned full-time to academic or vocational programming as students.)

($15 monthly)

8. **Work Camps** (Inmates assigned to work camps.)

($45 to $75 monthly)

9. **New Admissions and Unassigned Inmates**

($10 monthly)

F. **Implementation of Pay Plan**

It shall be the responsibility of each Chief Administrative Officer or his designee to implement this pay plan at his facility and to ensure that daily/monthly wages are computed in accordance with Section II.H. of this directive.

1. Assignment supervisors shall be responsible for keeping accurate records of inmates working each day on an assignment and for turning in timely reports at the end of each month to the business office for computation of wages.

2. Unassigned pay may be terminated after a documented attempt to place an inmate on a work or a school assignment has resulted in the inmate's refusal to accept either opportunity.

3. The business office shall be responsible for the computation of each inmate's wages and crediting same to his trust fund account.

# ILLINOIS DEPARTMENT OF CORRECTIONS

### ADMINISTRATIVE
### DIRECTIVE

| | |
|---|---|
| Number | 05.03.103A |
| Page Number | 4 of 5 |
| Effective Date | 9/1/86 |

| | | |
|---|---|---|
| Section: | 05 | Operations |
| Subsection: | 03 | Inmate Management and Movement |
| Subject: | 103A | Monetary Compensation for Inmate Assignments |

G. **Work Requirements**

In order for an inmate to receive monetary compensation for a work day, he must work at least four (4) hours during that day on his assignment.

1. An inmate that works his assignment less than four (4) hours a day will not be paid unless he is a full-time student.

2. An inmate absent from his assignment due to non-documented illness, family visits, furlough, release on writ (including temporary transfers to writ facilities), or segregation placement will receive no monetary compensation for the time of his absence.

H. **Computation of Wages**

The daily wage rate listed in Section II.E. for categories 1, 2, 3, 4, 5, and 6 is based on 21 work days per month.

1. The amount of pay for the inmate shall be computed by multiplying the total number of days worked by the inmate's daily wage, or his pay shall be based on a monthly basis.

2. An inmate working on two or more assignments within a calendar month shall have his wages computed according to the number of days worked on each assignment.

3. An inmate working on two different assignments within one day shall be compensated at the wage rate for his regular assignment and will only be credited for one day of work.

4. In some cases, such as dietary areas, where inmates work under special conditions, i.e., alternate days, longer hours, etc., the Chief Administrative Officer or his designee may award additional privileges or pay with approval from the Director.

5. In the event the correctional facility experiences a deficit of funds in its Student Member Inmate Compensation line item, the Chief Administrative Officer may temporarily reduce or suspend the amount of money to be paid an inmate.

# ILLINOIS DEPARTMENT OF CORRECTIONS

**ADMINISTRATIVE DIRECTIVE**

| | |
|---|---|
| Page Number | 05.03.103A |
| | 5 of 5 |
| Effective Date | 9/1/86 |

---

| Section: | 05 | Operations |
|---|---|---|
| Subsection: | 03 | Inmate Management and Movement |
| Subject: | 103A | Monetary Compensation for Inmate Assignments |

I.  Exceptions

Inmates assigned to Correctional Industries or School District #428 shall be compensated in accordance with the monetary compensation plan established for that area.

---

Authorized by:

DIRECTOR

Supersedes:
05.03.103A    AD    10/1/84



**ILLINOIS DEPARTMENT OF CORRECTIONS**

**ADMINISTRATIVE DIRECTIVE**

| | |
|---|---|
| | 05.03.103A |
| Page Number | |
| | 3 of 5 |
| Effective Date | |
| | 9/1/86 |
| | Amended 4/1/87 |

Section:     05     Operations

Subsection:     03     Inmate Management and Movement

Subject:     103A     Monetary Compensation for Inmate Assignments

## AMENDMENT TO ADMINISTRATIVE DIRECTIVE

Effective immediately, paragraph E.10. shall be added as follows:

10.  **Condemned Unit Worker**  (General         $1.43 to $2.15 daily
population inmates assigned to
work in the Condemned Unit.)         ($30 to $45 monthly)

This amendment is to be placed in your Administrative Directives Manual
in front of Administrative Directive 05.03.103A.

Authorized by:

DIRECTOR

D6

Outgoing Legal Mail Log

3/6/2008

| Inmate # | Last Name | First Name | Date | Type of Recipient | City | St | PKG/LU |
|---|---|---|---|---|---|---|---|
| R51546 | KENDRICK | ANTONIO | 7/25/2006 | FRANK P. ANDREANO | JOLIET | IL | |
| R51546 | KENDRICK | ANTONIO | 7/27/2006 | S.A.D. | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 8/29/2006 | S.A.D. | ELGIN | IL | PKG |
| R51546 | KENDRICKS | ANTONIO | 5/23/2007 | STE APPEL | MT VERNON | IL | |
| R51546 | KENDRICKS | ANTONIO | 5/23/2007 | APPEL CRT | CHICAGO | IL | |
| R51546 | KENDRICK | ANTONIO | 10/17/2006 | S.A.D. | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 10/20/2006 | APPEL CRT CLERK | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 10/31/2006 | APPEL DEF. | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 11/1/2006 | RICE & SMITH LTD | WHEATON | IL | |
| R51546 | KENDRICK | ANTONIO | 11/22/2006 | APPEL CLERK | ELGIN | IL | PKG |
| R51546 | KENDRICK | ANTONIO | 12/5/2006 | APPEL CRT | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 1/6/2007 | PEGGY JACKSON BRADFOR | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 1/17/2007 | MARTIN P. MOLTZ ATTY | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 1/17/2007 | CLERK | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 3/9/2007 | SHELBY CTY CRIM CRT | MEMPHIS | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 3/9/2007 | SHELBY CTY ATTY GEN | MEMPHIS | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 3/21/2007 | SHELBY CTY DIST. ATTY GE | MEMPHIS | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 3/21/2007 | SHELBY CTY CIR CLERK | MEMPHIS | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 4/17/2007 | SHELBY CTY ATTY GEN | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 4/17/2007 | STE OF TENN. ATTY GEN | NASHVILLE | TN | |
| R51546 | KENDRICK | ANTONIO | 4/17/2007 | CLERK | MEMPHIS | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 5/15/2007 | APPEL CRT | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 5/23/2007 | SUP CRT | JACKSON | TN | |
| R51546 | KENDRICKS | ANTONIO | 6/14/2007 | CRT CLK | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 6/14/2007 | APPEL CRT | ELGIN | IL | PKG |
| R51546 | KENDRICK | ANTOINE | 6/14/2007 | ATTY GEN | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 6/14/2007 | STE ATTY | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 6/23/2007 | CIR CLK | MT VERNON | IL | |
| R51546 | KENDRICK | ANTOINE | 6/23/2007 | SUP CRT BLDG | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 6/29/2007 | STE ATTY | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 6/29/2007 | APPEL CRT | MT VERNON | IL | |
| R51546 | KENDRICK | ANTONIO | 7/6/2007 | | CHICAGO | IL | PKG |
| R51546 | KENDRICK | ANTONIO | 7/7/2007 | STE ATTY | ELGIN | IL | PKG |

Page 1

Exhibit E        E1

Outgoing Legal Mail Log

| Inmate# | Last Name | First Name | Date | Recipient | City | State | PKG |
|---|---|---|---|---|---|---|---|
| R51546 | KENDRICK | ANTONIO | 7/18/2007 | APPEL PROSECUTOR | MT VERNON | IL | |
| R51546 | KENDRICK | ANTONIO | 7/18/2007 | APPEL CRT / APPEL CLK | ELGIN | IL | PKG |
| R51546 | KENDRICK | ANTONIO | 7/31/2007 | APPEL CRT | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 9/10/2007 | ST OF IL APPELLATE PROS | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 9/10/2007 | APPELLATE COURT CLK | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 9/13/2007 | JDGE JAMES C BEASLEY | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 9/12/2007 | APPEL CRT | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 9/12/2007 | CIR CLK | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 9/12/2007 | | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTOINE | 9/19/2007 | STE ATTY | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 9/19/2007 | APPEL CRT | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 9/21/2007 | APPEL CRT | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 9/21/2007 | APPEL CRT CLK | JACKSON | TN | |
| R51546 | KENDRICK | ANTOINE | 9/26/2007 | APPEL CRT CLK | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 9/28/2007 | APPEL CRT | JACKSON | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 9/28/2007 | STE ATTY | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 9/28/2007 | CIR CLK | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 10/12/2007 | CIR CLK | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 10/12/2007 | DIST ATTY / ATTY GEN | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 10/12/2007 | APPEL CRT | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 10/12/2007 | APPEL PROSECUTOR | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 10/25/2007 | APPELLATE COURT CLERK | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 11/2/2007 | APPEL CRT | ELGIN | IL | PKG |
| R51546 | KENDRICK | ANTOINE | 11/6/2007 | IDOC - DEP DIR PIERCE | SPR | IL | |
| R51546 | KENDRICK | ANTOINE | 11/6/2007 | IDOC - SHERRY BEATON | SPR | IL | |
| R51546 | KENDRICK | ANTOINE | 11/6/2007 | IDOC - CHERRY BREWER | SPR | IL | |
| R51546 | KENDRICK | ANTOINE | 11/6/2007 | IDOC - ROBERTA FEWS | SPR | IL | |
| R51546 | KENDRICK | ANTOINE | 11/6/2007 | IDOC - ROBERT WILLIAMS | SPR | IL | |
| R51546 | KENDRICK | ANTONIO | 11/17/2007 | APPEL CRT CLK | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 11/17/2007 | APPEL DEF | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 11/17/2007 | SUP CRT | NASHVILLE | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 11/17/2007 | ATTY GEN | NASHVILLE | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 12/12/2007 | ARB | SPR | IL | PKG |
| R35546 | KENDRICK | ANTONIO | 12/20/2007 | ATTY GEN | MEMPHIS | TN | PKG |

3/6/2008

E2

Outgoing Legal Mail Log

3/6/2008

Page 3

| Inmate # | Last Name | First Name | Date | Recipient | City | St | PKG PC/PO |
|---|---|---|---|---|---|---|---|
| R51546 | KENDRICK | ANTONIO | 12/20/2007 | CIR CLK | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 1/4/2008 | CRT CLK | MEMPHIS | TN | |
| R51546 | KENDRICK | ANTONIO | 1/24/2008 | APPEL CRT CLK | ELGIN | IL | PKG |
| R51546 | KENDRICK | ANTONIO | 1/24/2008 | ATTY GEN | NASHVILLE | TN | |
| R51546 | KENDRICK | ANTONIO | 1/24/2008 | APPEL PROSECUTOR | ELGIN | IL | |
| R51546 | KENDRICK | ANTONIO | 1/24/2008 | APPEL CRT CLK | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 1/26/2008 | ARB | SPFD | IL | |
| R51546 | KENDRICK | ANTONIO | 2/7/2008 | APPEL CRT | JACKSON | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 2/7/2008 | ATTY GEN OF TENNESSEE | NASHVILLE | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 2/13/2008 | ATTY GEN OF TENNESSEE | NASHVILLE | TN | |
| R51546 | KENDRICK | ANTONIO | 2/13/2008 | APPEL CRT | JACKSON | TN | 2L |
| R51546 | KENDRICK | ANTONIO | 2/13/2008 | APPEL CRT CLERK | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 2/14/2008 | LINDA PIECZYNSKI ATTY | HINSDALE | IL | |
| R51546 | KENDRICK | ANTONIO | 2/25/2008 | APPELLATE COURT CLERK | JACKSON | TN | |
| R51546 | KENDRICK | ANTONIO | 2/27/2008 | UPTOWN PEOPLE'S LAW OF | CHICAGO | IL | |
| R51546 | KENDRICK | ANTONIO | 2/27/2008 | JAMES P. CHAPMAN ATTY | CHICAGO | IL | |
| R51546 | KENDRICK | ANTONIO | 2/27/2008 | MARGARET BYRNE ATTY | CHICAGO | IL | |
| R51546 | KENDRICK | ANTONIO | 2/27/2008 | JACK A. ROVNER ATTY | CHICAGO | IL | |
| R51546 | KENDRICK | ANTONIO | 2/27/2008 | ROBERT SHAPIRO ATTY | CHICAGO | IL | |
| R51546 | KENDRICK | ANTONIO | 3/6/2008 | SHELBY CTY ATTY GEN | MEMPHIS | TN | PKG |
| R51546 | KENDRICK | ANTONIO | 3/6/2008 | SHELBY CTY CIR CLERK | MEMPHIS | TN | PKG |

E3

# Illinois
## Department of
# Corrections

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

January 30, 2008

Register No. ▓▓▓▓▓▓
Stateville Correctional Center

Dear Mr. Gaston:

This is in response to your grievance received on December 21, 2007, regarding Library (Not Given Full 2 Hours 11/21/07), which was alleged to have occurred at Stateville Correctional Center. This office has determined the issue will be addressed without a formal hearing.

This office has reviewed your written grievance dated November 21, 2007 which states in summary that while in the law library, you are still not receiving the full two-hours afforded to you. This office notes that this office addressed this issue on an ARB report dated 3/23/07.

The Grievance Officer's report (1576) and subsequent recommendation dated December 10, 2007 and approval by the Chief Administrative Officer on December 13, 2007 have been reviewed.

This office contacted Stateville Correctional Center and was advised that Warden's Bulletin 2005-70 (regarding library schedule) is still in effect.

Based on a total review of all available information, and in accordance with DR 504.850, it is the opinion of this office that the grievance be ruled mixed. While this office still upholds Stateville's administrative decisions to vary/change library hours, this office would again reiterate to Warden McCann, that length of time allowed/scheduled in library should be adhered to (barring institutional needs/emergencies).

FOR THE BOARD:  _Sherry Benton_

Sherry Benton
Administrative Review Board
Office of Inmate Issues

**I concur. Warden McCann is to ensure the allotted timeframe for attending the Law Library, barring institutional needs/emergencies, is adhered to.**

_Roger E. Walker Jr._

Roger E. Walker Jr.
Director

cc:   Warden Terry McCann, Stateville Correctional Center
      James Gaston, Register No. A62613

Exhibit F